### FINK v. THE CITY OF ST. LOUIS, *Appellant.*

**Municipal Corporation**: LIABILITY FOR DAMAGE TO ADJOINING PROPRIETOR IN RECONSTRUCTION OF SEWERS. The charter of the city of St. Louis conferred upon the city exclusive control over its own sewers. The general law authorized any railroad company to construct its road along any street of any city in the State, provided the assent of the city was first obtained. The city of St. Louis, by ordinance, gave its assent to the construction of a subterranean railroad along and under one of its streets, but reserved the right, in case it became necessary in the progress of the work to remove any sewer, to supervise and control the work of removal and reconstruction. It did become necessary to remove one of the sewers, which was accordingly removed and reconstructed outside the line of the tunnel which was built for the use of the railroad. Owing to the negligence of the company's contractor in the reconstruction of this sewer, the foundation of a house fronting on the street gave way and the house was greatly damaged. In an action against the city to recover damages for the injury; *Held,* that the city was liable; and the fact that its officers failed to exercise any supervision or control over the work was no defense. It was their duty to have done so.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

This was an action brought against the City of St. Louis and the St. Louis Tunnel Railroad Company, to recover damages for injuries occasioned to plaintiff's property by negligence in making an excavation for a sewer. Plaintiff's property consisted of a dwelling house fronting and abutting upon Eighth street, in said city. The Tunnel Railroad Company was a corporation organized under the general laws of the State, for the purpose of building a subterranean railroad to connect the bridge over the Mississippi river with the railroads leading into the city on the west side of the river. The route of this railroad lay along Eighth street and immediately in front of plaintiff's property. In order to build a tunnel through which the road should run, the company made a deep excavation in the

street. In making this excavation it became necessary to remove a public sewer which ran down the middle of the street, and to reconstruct it outside of the tunnel wall, and between this wall and plaintiff's house. The negligence complained of occurred in making the excavation necessary for this new sewer, and the injury consisted of the caving in of plaintiff's ground and the cracking and breaking of his walls, whereby the house was made unsafe and plaintiff lost rents.

The statute under which the Tunnel Railroad Company was organized provided that every company organized under it should have power to construct its road across, along or upon any street which the route of its road should intersect or touch, but the company should restore the street to its former state, or to such state as not unnecessarily to impair its usefulness; and that nothing in the statute contained should authorize the construction of a road in, upon or across any street in any city without the assent of the corporate authorities of the city. 2 Wag. Stat., p. 296, §§ 1, 2. The city council of the city of St. Louis passed an ordinance giving its assent to the building of the tunnel railroad in Eighth street. By the 4th section of the ordinance it was provided that if in the course of the construction of the tunnel it should be necessary to cut under or through any main or district sewer, or water or gas pipe, it should be the duty of the company, before severing any such sewer or pipe, to notify the mayor and city engineer, and to reconstruct and rebuild such sewer or pipe in such manner as the mayor and city engineer might direct, and under the supervision of the city engineer. The evidence showed that plans of the work were submitted by the company to the city authorities. On the part of the city evidence was offered to show that the city engineer exercised no supervision or control over the work whatever; but on objection from the plaintiff this evidence was excluded.

For the plaintiff the court instructed the jury as fol-

lows: If the jury believe that said building or premises were damaged and injured by reason of any unskillfulness or want of due care or precaution in the construction of or excavating for a sewer under the sidewalk in front of said premises on Eighth street, or by reason of any unskillfulness or want of due care or precaution in protecting or providing for the protection of plaintiff's house and premises from injury from such excavation, then the jury will find for the plaintiff against the city. The city prayed the court to instruct as follows: If the jury believe from the evidence that the city did not exercise any supervision or control over the excavation in front of plaintiff's premises, but that said excavation was made by the tunnel company, its contractors and servants, under the supervision and direction of and pursuant to plans prepared by the engineers of said tunnel company, then there can be no recovery herein against the city. But the court refused so to instruct. There was a verdict and judgment for plaintiff against both defendants, from which the city alone appealed to the court of appeals, and, upon affirmance *pro forma* there, again appealed to this court. The giving and refusing of instructions and the exclusion of evidence present the question for decision by this court.

*Leverett Bell* for appellant.

The city is not liable. The injury was caused by the railroad company in the construction of its tunnel. The authority to do this emanated from the State, as did the power to build, maintain and operate the railroad. The condition annexed by the statute that the consent of the city should first be obtained, was inserted for the protection of the public. It was not intended to create any liability against the city that did not otherwise exist. But for this condition the company could have built without the city's assent. *A. & P. R. R. Co. v. St. Louis*, 66 Mo. 228.

The removal and reconstruction of the sewer was made

necessary by the tunnel, and was a mere incident of that work.  The fact that the excavation was made for a sewer, does not impose any liability on the city other than that borne by it in the matter of the excavation for the tunnel. It is not the case of the city undertaking to build a sewer in the first instance.  The sewer existed.  The duty of the city in relation thereto was fully discharged and terminated. The occupation of the street by the tunnel company required the removal of the sewer.  It was removed to answer this end ; not to meet any public need.  There was no duty imposed upon the city in the premises, and, therefore, no obligation springing from it to the plaintiff.

No part of the work was done by the city, or for the city.  It was a private enterprise conducted by a private corporation for the purpose of gain.  The city held no interest in the corporation.  It received no emolument for granting the use of its streets.  It did not even grant such use; the right to occupy the street was granted by the State, subject to the permission of the city being obtained. The railroad company did not act for the city.  It was not the agent of the city.  The city was not bound by its acts, nor responsible therefor.  The city was not a surety or guarantor for the railroad company.  It did not undertake to contract that it would be responsible for the acts of the railroad company ; and if it had assumed a liability, its assumption thereof would have been invalid, for it had no power to incur such an obligation.

Whether or not there was negligence in the performance of the work, is immaterial, since the work was not done for or by the city, and the relation of principal and agent did not exist between the city and the company. As against the city the damage sustained by the plaintiff is *damnum absque injuria*.  *St. Louis v. Gurno*, 12 Mo. 414. Whether there was negligence or not, the city is not liable. *Balt. & P. R. R. Co. v. Reaney*, 42 Md. 117.  The fact that the city received an indemnifying bond from the company

does not tend to fix a liability on the city. *Green v. Portland*, 32 Me. 431; *Murphy v. Chicago*, 29 Ill. 279.

*Ed. P. McCarty* and *Davis and Smith* for respondent.

The city is given complete and exclusive control over its sewers. See charter, Acts 1870, p. 480, §§ 11, 12, 13. The excavation for the reconstruction of the sewer was made in the exercise of an express corporate power, and in the performance of a clear corporate duty. For any negligence or unskillfulness in the exercise of such power or duty, the city is liable. *Thurston v. St. Joseph*, 51 Mo. 510; *Wegmann v. Jefferson City*, 61 Mo. 55; Dillon on Munic. Corp., p. 724. The city cannot shift the responsibility upon the railroad company. It had the power by law to annex conditions to its consent that the company should occupy the street. Wag. Stat., p. 297, § 2, clause 4; Dillon Munic. Corp., § 559; *N. C. R. R. Co. v. Baltimore*, 21 Md. 93. It did in fact annex the condition that any sewer which it might become necessary to remove, should be removed and reconstructed in such manner as the mayor and city engineer might direct, and under the supervision of the city engineer. In view of the city's powers and duties in respect of its sewers, and of its own ordinance recognizing and providing for the performance of these, plaintiff insists that the tunnel company, in doing the work of reconstructing said sewer, was the mere agent of the city, and that the city was and is responsible for any neglect or default on the part of said agent in doing said work, and that it is immaterial whether the city did in fact supervise the work or not.

NAPTON, J.—The only question in this case is the propriety of the assumption on the part of the plaintiff, that the city was liable for any negligence in the reconstruction of the sewer on Eighth street although such reconstruction was brought about in the building of a tunnel in the middle of the street, under authority from the State with which

the city had no concern. The petition of the plaintiff is based on two grounds, one of which is, that by the charter of the city the power over all the sewers, &c., of the city is expressly and exclusively granted to the city, and more especially, because ordinance 6442, in section 4, expressly declares that if, in the course of the construction of said tunnel, " it shall become necessary to make an open cut in any street or alley, or cut under or through any main or district sewer, or water pipe or gas pipe, it shall be the duty of said bridge company," (transferred afterward to the tunnel company,) " before removing any sewer, or water pipe or gas pipe, to notify the mayor and city engineer and reconstruct and rebuild such sewer    *    *    in such manner as the mayor and city engineer may direct, and under the supervision of the city engineer." The city contends that the responsibility of making the tunnel was thrown by the State on the tunnel company alone, and the city had nothing to do with it, which is conceded by the plaintiff, and when, in order to get the tunnel, it became necessary to excavate for a reconstruction of the sewer, that also was a consequence of the power granted by the State to construct the tunnel. Neither could be done without permission of the city, for so the law of the State declared, and this permission of the city was in fact accompanied with restrictions that if a change in sewers became necessary, the city authorities had to be counseled in regard to such change, and the work had to be done under the supervision of the city authorities. The circuit court which tried the case, therefore, held that whether the city engineer did in fact superintend the work or not, it was his duty under the ordinance and charter to do so, and the city was responsible for any negligence occasioning injury to the proprietors of adjoining lots. And we think this view of the case was right and in harmony with the authorities. The action is not for damages occasioned by the tunnel, but for an excavation for a sewer, which could only be done by consent of the city and under supervision of the city en-

gineer. The plans for the work were submitted to the city and approved, and whether its officers supervised its execution or not, was of no consequence, since it was their duty to have done so—a duty imposed by the charter and recognized in the ordinance, and with which the State had no concern and did not attempt to interfere.

The questions in regard to negligence and the amount of damages were submitted to the jury, and no objections are made to the instructions on these points. The only point made in the case is the one we have referred to, and in this our opinion is that the circuit court was right, and, therefore, the judgment is affirmed.    All concur.